This is an appeal from a judgment entered after the trial court directed a verdict in favor of the defendant Burlington Northern Railroad Company (hereinafter "Burlington") in an action brought under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 et seq. Plaintiff Pauline J. Carlew, as administratrix of the estate of Mervin Y. Carlew, alleged that her husband's death on September 11, 1984 was the result of a myocardial infarction caused by the negligence of her husband's employer, Burlington. The trial court determined that there was insufficient evidence to take the case to the jury and entered a directed verdict. We affirm.
On December 30, 1983, several months prior to his death, Mervin Y. Carlew, who was employed by Burlington as an engine foreman, was supervising switching operations in Memphis, Tennessee on the property and tracks of Cargill, Inc., a third-party defendant. The switching operations began at approximately 8:00 p.m. on a very cold night, and sometime later that evening Mr. Carlew attempted to engage a crossover switch on Cargill's property. Mrs. Carlew alleged that it was so cold that the switch was frozen. After unsuccessfully attempting to engage the switch, Mr. Carlew walked from the switch toward a test house near the side of the tracks. Mr. Carlew complained of chest pains to Glen Roberts, and stated that the pain went down into his arms. Subsequently, Mr. Carlew drove himself to Methodist South Hospital.
On December 31, 1983, after being admitted to the hospital, Mr. Carlew was transferred to Methodist Central Hospital, where he was treated and was hospitalized until January 13, 1984. At the time he was released, Mr. Carlew was receiving heavy medication to help treat his heart disease and arteriosclerosis. In January and February of 1984, Mr. Carlew was repeatedly admitted to the hospital, and he underwent repeat bypass surgery on February 20, 1984. On August 1, 1984 he was readmitted for congestive heart failure, and, after being treated, he was released on August 11, 1984. His prognosis upon discharge was poor; bed rest was recommended, and he was on a very experimental drug protocol. Mr. Carlew died on September 11, 1984.
Prior to the incident on December 30, 1983, Mr. Carlew had suffered from a long history of heart disease. On August 28, 1979, he had been treated for a myocardial infarction of the inferior wall, which was secondary to coronary artery disease. In November 1979 Mr. Carlew underwent bypass surgery. He continued to suffer various cardiac difficulties, including Dressler's syndrome, and was hospitalized from November *Page 901 
28, 1979, until December 8, 1979. Other occurrences of heart disease included chest pains on March 27, 1980; cardiac rhythmic disturbance, which required hospitalization on June 9, 1980; and premature cardiac contractions as indicated by electro-cardiograms in July 1981 and July 1983. Medical experts testifying for Carlew stated that the decedent suffered severe heart disease.
The questions before us on appeal are whether Carlew proved that Burlington was negligent in the maintenance and inspection of the cross-over switch, and if so, whether Carlew proved that Burlington's negligence in anyway caused her husband's death?
In order to establish liability under the FELA, the employee must submit sufficient evidence from which the jury could reasonably infer that the employer was negligent. Additionally, there must be sufficient evidence from which the jury could reasonably infer that the employer's negligence was the cause of the claimed injury or death.Rogers v. Missouri Pacific R.R., 352 U.S. 500,77 S.Ct. 443, 1 L.Ed.2d 493 (1957).
The first portion of this analysis requires the plaintiff to establish that the employer owed a duty to the employee and that the employer breached that duty.
Under the FELA, a railroad employer has a duty to provide its employees with a safe place to work, but that general duty is not absolute and all that is required is that reasonable care be used. Gallick v. Baltimore andO.R.R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618
(1963). A railroad company is not the insurer of the safety of its employees, and the FELA requires only that a railroad employer exercise reasonable care commensurate with the danger to be anticipated. Atlantic Coast Line R.R. v.Dixon, 189 F.2d 525 (5th Cir.), cert. denied,342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951). Reasonable foreseeability is an essential element under the FELA.Gallick, supra.
The test is whether reasonable or ordinary care has been exercised by the employer with regard to the attendant circumstances of the employment that could reasonably have been anticipated by a prudent man. Southern Ry. v.Bell, 114 F.2d 341 (4th Cir. 1940). The fact that dangerous situations may arise that are the natural and normal consequence of climatic conditions beyond the employer's control does not necessarily imply negligence.McGivern v. Northern Pac. Ry., 132 F.2d 213 (8th Cir. 1942). Since railroad companies have no control over the vagaries of the weather or climatic conditions, there is no liability resulting from the mere existence of ice or snow, that is disconnected from other circumstances. Turner v.Clinchfield R.R., 489 S.W.2d 257, 261 (Tenn.Ct.App. 1973).
In the present case, there was insufficient evidence for a reasonable person to infer that the alleged difficulty with the switch was the result of negligence on the part of Burlington. The plaintiff supplied no evidentiary basis from which a jury could reasonably conclude that under normal circumstances a switch is of a certain degree of difficulty to throw, but that this switch was of a greater difficulty to throw.
In addition, there was no evidence indicating that Burlington breached its duty to provide a safe place to work. The only evidence regarding the condition of the switch was the testimony of Mr. Glen Roberts, as follows:
 "Q. Now, how could you tell what the problem was with the switch?
"A. You mean about it being frozen?
"Q. Yes, sir.
 "A. I'm assuming it was froze. I will tell us [sic] this: There was no way we could throw it. If it was not froze, I don't know what other problem there would be with it."
This unsubstantiated contention, in and of itself, is not proof that the switch was actually frozen or defective in any way, including mechanically. There is no evidence linking the cause of the difficulty to any fault or negligence on the part of Burlington. Carlew's evidence does not show why the switch was frozen or whether the switch was frozen at all. Negligence cannot *Page 902 
be assigned where the cause of the incident cannot be or is not shown. Turner, supra.
To conclude that the difficulty in throwing the switch was in any way proximately related to an act or omission of Burlington that would constitute a breach of duty would require impermissible speculation. Speculation by the jury is prohibited, McClinton v. McClinton, 258 Ala. 542,63 So.2d 594 (1952), and a verdict in an FELA case cannot be based on speculation or conjecture. Atchison T. S.F.Ry. v. Myers, 179 Okla. 637, 69 P.2d 62, appeal dismissed, 302 U.S. 636 (1937). See, Elgin, J. E. Ry.v. Gibson, 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193
(1957) ("[n]ot until this Court explicitly holds that in 'FELA cases, speculation, conjecture and possibilities suffice to support a jury verdict,' . . . is that to be assumed to be the law of this Court"). The case must be withdrawn from the jury's consideration if they would have to speculate on the cause of the injury and whether negligent acts of the employer were in some way responsible for the injury. Myers, supra.
Having determined that Carlew failed to prove that Burlington breached its duty to provide a safe place to work, we need not address the issue of causation. However, we will address one specific contention as it relates to the deposition testimony of Dr. Arthur Joseph Sutherland III, regarding causation.
Carlew contends that the trial court erred in excluding certain deposition testimony by Dr. Sutherland, one of the decedent's physicians. During the trial, the plaintiff offered testimony in response to the following question:
 "Dr. Sutherland, based on the history that you obtained from Mr. Carlew and your subsequent treatment of Mr. Carlew and examinations of him, do you have an opinion based upon a reasonable medical probability as to whether the incident in which he was attempting to throw the switch aggravated the arteriosclerotic condition that he suffered from prior to that date?" (emphasis added)
We hold that the answer was properly excluded. The plaintiff did not contend that Mr. Carlew's death was a result of trauma that worsened his arteriosclerotic state. The complaint in this case alleged that the Mr. Carlew suffered an acute myocardial infarction, caused by attempting to throw a frozen switch. Evidence of "aggravation" is not proof of "causation" in this setting. It was proper for the trial court to exclude evidence not relevant to the case at hand.
Considering all the above, we hold that the trial court did not err in directing a verdict for Burlington. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.