SHORES, Justice.
This is a hearing loss case brought under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 et seq. The plaintiff, Jimmy Wayne Bryant, an employee of CSX Transportation, Inc., in Louisville, Kentucky, sued on November 24, 1986, in Jefferson County, Alabama, claiming that he had been exposed to extremely loud noise while he was working for CSX between 1969 and 1985 and that that noise had caused his loss of hearing. The case was tried before a jury, which found for Bryant in the amount of $25,000. CSX filed a motion for a new trial or, in the alternative, for j.n.o.v., which was denied by the trial court. CSX appeals. We affirm.
We must consider whether the trial court erred in denying CSX’s motion for a new trial. CSX contends that Bryant failed to produce any evidence of harmful noise levels at his workplace and thus failed to sustain his burden of proof.
This Court set forth the standard for establishing liability in FELA cases in Carlew v. Burlington Northern R.R., 514 So.2d 899 (Ala.1987):
“In order to establish liability under the FELA, the employee must submit sufficient evidence from which the jury could reasonably infer that the employer was negligent. Additionally, there must be sufficient evidence from which the jury could reasonably infer that the employer’s negligence was the cause of the claimed injury or death. Rogers v. Missouri Pacific R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957.)”
514 So.2d at 901. The United States Supreme Court defined the scope of judicial review of jury verdicts in FELA cases in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946):
“Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury’s verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court’s function is exhausted when the evidentia-ry basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.”
See also Lindsey v. Louisville & Nashville R.R., 775 F.2d 1322, 1325 (5th Cir.1985).
The record reflects that Bryant presented sufficient evidence from which the jury could reasonably infer that CSX was negligent and that its negligence was the cause of his injury. Bryant and other employees of the Osborn Yard at Louisville gave testimony describing the nature and intensity of the noise produced by the master retarder and skates that were put into use by CSX in 1977. At that time, CSX opened a *708 new switching system involving the use of electronic switching. Cars moved from the hump by gravity into the bowl area where the trains were made up. Master retarders and skates were electronically operated to stop the cars. These machines produce tremendous noise when metal meets metal.
Russell A. Sauer, a 28-year railroad veteran, characterized the noise at the yard as “excruciating.” He said, “If it didn’t stop you would probably go crazy.” This noise, according to Sauer, went on 25 percent of the time. John H. Silinsky, a locomotive engineer and an employee of CSX for 24 years, testified concerning the noise in the railroad yard. He testified that he had made numerous complaints to CSX concerning the noise and had made suggestions for improvements. He stated that the noise was so loud that it was impossible to talk to his supervisor. Bryant testified as to the noise of the engine, the whistles, the bells, and the air brakes and as to the squeal of the wheels. Bryant testified that in his job he was within four feet of the source of the squeal of the wheels and that the noise would continue for the whole time he was on a car. He described a particular incident on October 17, 1985, when he was working as a switchman. As part of his duties, he had to ride a train through closed retarders, which create intense noise. Bryant testified also as to the difficulty of hearing the radio instructions on the job and as to the effect of his loss of hearing on his relationship with his family.
There was also testimony regarding numerous complaints made to railroad officials about the noise. Despite complaints, no noise level testing was performed by the railroad prior to 1985. The evidence also showed that the railroad did not provide any ear protection between 1969 and 1985, and that, in fact, CSX’s rules prohibited anything that would cover the ears of CSX’s employees or obstruct their hearing.
The plaintiff presented expert testimony through Curtis Smith, Ph.D., an audiologist; Smith reviewed the audiograms performed on Bryant upon his separation from the military and one made in April 1986. Smith testified that Bryant left military service with some hearing impairment, but very little that would affect his ability to understand people talking. He further stated that Bryant’s present hearing loss is significant and that, in his opinion, Bryant’s hearing loss “could rightfully be called a noise-induced permanent threshold shift caused by workplace noise.” Dr. Smith testified:
“He has what is called an inner ear type hearing loss, and the medical term for that is sensoryneural, s-e-n-s-o-r-y-n-e-u-r-a-1. It’s a big word. It means inner ear hearing loss, that’s all it means. It means it is not going to get better and it means that medicine or surgery won’t get it any better. There is not anything that can be done. But the worst thing, the worst thing to me, is that you can’t put a hearing aid on either ear and make him hear better because the higher the intensity the worse he hears. The louder the sound, the worse he hears.”
Dr. Smith testified that he conducted noise level tests at the Osborn Yard. He said he found that the metal retarders produced a level of sound as high as 125 dba. He stated that a person can not shout that loudly and that an automobile horn will not honk that loudly. Bryant presented a video tape recording of the master retarder in action, the sound part of which was amplified to the levels found on the yard.
Dr. Dennis G. Pappas, M.D., a medical doctor specializing in diseases of the ear, testified that he examined Bryant on April 15, 1986. He testified that, in his opinion, Bryant’s hearing loss was noise induced. He said that in the left ear, Bryant's loss was 24.4 percent; in the right ear, 9.4 percent.
For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.