667 So.2d 642 (1995)
CSX TRANSPORTATION, INC.
v.
Forrest M. MAYNARD.
1931145.
Supreme Court of Alabama.
April 7, 1995.
Opinion Overruling Application for Rehearing August 4, 1995.
*643 James F. Walsh and David B. Hall of Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.
Michael D. Blalock of Blalock and Blalock, P.C., Birmingham, for appellee.
MADDOX, Justice.
This is a Federal Employers Liability Act ("FELA") case. The plaintiff Forrest Maynard sued CSX Transportation, Inc., alleging that he had suffered a hearing loss by being exposed at his workplace to machines that emitted noises that exceeded OSHA noise standards. The case was tried before a jury, which returned a verdict in favor of Maynard for $325,000 in compensatory damages. The trial court denied CSX's motion for a new trial or a remittitur and entered a judgment on the verdict. CSX appeals. We affirm.
Maynard has been employed as a welder with CSX since October 18, 1981. He claims that CSX did not provide hearing protection or require hearing testing for its employees until 1990. On September 24, 1990, Maynard was tested by a CSX hearing consultant in a van at a CSX work site. Shortly thereafter, on October 3, 1990, Maynard received a letter from CSX informing him that the test revealed that he might have difficulty hearing and recommending an annual hearing examination; CSX did not mention in the letter any possible causes of Maynard's hearing impairment. On December 30, 1990, CSX employees were given a company questionnaire concerning possible hearing loss. *644 The employees' answers to the questionnaire had to be sworn to and notarized. Maynard and his wife completed the questionnaire and returned it as instructed. On March 3, 1991, CSX gave Maynard another hearing test. After this test, he received a letter informing him that he had a problem hearing and understanding even loud conversations. Once again, the possible causes of the hearing problem were not mentioned. In the letter, CSX again recommended an annual hearing exam. Thereafter, Maynard received from CSX a letter concerning his hearing loss, dated April 19, 1991; that letter included an offer to pay Maynard for his hearing loss. After receiving this letter, Maynard contacted an attorney. He later filed this FELA action, in October 1991.

I.
We first address the scope of our review. The United States Supreme Court defined the scope of judicial review of jury verdicts in FELA cases in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946):
"Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when the evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."
See also Lindsey v. Louisville & N.R.R., 775 F.2d 1322, 1325 (5th Cir.1985), CSX Transportation, Inc. v. Bryant, 589 So.2d 706 (Ala. 1991).

II.
CSX argues that Maynard did not present sufficient evidence, specifically medical testimony, that CSX had negligently caused him to suffer hearing loss. This Court set forth the standard for establishing liability in FELA cases in Carlew v. Burlington N.R.R., 514 So.2d 899 (Ala.1987):
"In order to establish liability under the FELA, the employee must submit sufficient evidence from which the jury could reasonably infer that the employer was negligent. Additionally, there must be sufficient evidence from which the jury could reasonably infer that the employer's negligence was the cause of the claimed injury or death. Rogers v. Missouri Pacific R.R., 352 U.S. 500, [77 S.Ct. 443, 1 L.Ed.2d 493] (1957)...."
514 So.2d at 901.
One of Maynard's expert witnesses, Professor Kent Oestenstad, industrial hygienist and University of Alabama at Birmingham professor of environmental health services, conducted noise testing in Tallahassee, Florida, on the railroad loading machine on which Maynard worked. Oestenstad concluded that Maynard had been exposed to excessive noise levels, based upon noise level standards adopted by OSHA and the Federal Railroad Administration.
CSX argues that Oestenstad's testimony was inadmissible and that Maynard could not rely on it to satisfy his burden of proving that his workplace was unsafe because of negligence on the part of CSX or that noise caused his alleged injury. First, CSX alleges that Oestenstad conducted no noise tests in the location where the plaintiff alleged that he had been exposed to excessive noise. Second, CSX alleges that Oestenstad used improper equipment to conduct the noise level tests in the other areas where he tested. Third, CSX alleges that during pretrial discovery Maynard refused to disclose Oestenstad's expert opinion regarding the plaintiff's noise exposure.
In response, Maynard alleges that the noise tests were conducted in all of the areas where he had worked except for the top of rail cars, and that CSX would not allow Oestenstad to go there. Maynard further contends that a noise meter had to be used rather than a "dosimeter" because CSX would not remove the machine's mufflers to enable dosimeter testing. Finally, Maynard argues that the trial court properly allowed Oestenstad's testimony at trial because his testing was encumbered and restricted by CSX and because up until the day of the trial *645 Maynard had offered to allow Oestenstad to be deposed.
CSX argues that because another of Maynard's experts, Dr. Jeffrey Fleigel, testified that there was a discrepancy between the hearing tests administered by CSX and those administered by his office that was not consistent with sensorineural hearing loss, Maynard failed to establish that he actually suffered any injury. The tests administered by Dr. Fleigel indicated an improvement in Maynard's hearing. However, CSX notes that Dr. Fleigel testified that one of Maynard's tests could have been interpreted as possibly being consistent with sensorineural hearing loss. Dr. Fleigel stated that the hearing loss revealed by his tests could have been caused by noise from any source.
Dr. Fleigel testified that a possible explanation for the improvement in Maynard's hearing during the tests administered by his office could have been Maynard's desire to participate in the tests. Another possible explanation offered by Dr. Fleigel was the differing conditions of the locations where the tests were administered. CSX administered its tests in a van near its worksite; the testing process was susceptible to outside noises on September 24, 1990, and March 3, 1991, the dates CSX administered the tests. These tests indicated that the plaintiff was having problems hearing in the low and high frequency ranges. On June 17, 1992, and January 15, 1993, an audiologist in Dr. Fleigel's office gave Maynard hearing tests in a soundproof booth; these tests revealed that Maynard was suffering from hearing loss at the "moderate-severe level" in the high frequency levels, with only mild to moderate losses at the lower frequency levels.
Maynard cites Hines v. Consolidated Rail Corp., 926 F.2d 262, 267 (3d Cir.1991), quoting Rogers v. Missouri P.R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957):
"[T]here can be a jury question of causation when there is evidence that any employer negligence caused the harm, or, more precisely, enough to justify a jury's determination that employer negligence had played any role in producing the harm."
(Emphasis omitted.) Maynard also cites Hines, at 268: "[A] medical expert can testify that there was more than one potential cause of a plaintiff's condition."
This Court held in Carlew that "speculation by the jury is prohibited, and a verdict in an FELA case cannot be based on speculation or conjecture." 514 So.2d at 902. This Court has further noted that "[a]s a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deductible from them as a reasonable inference." Bradford v. McGee, 534 So.2d 1076, 1079 (Ala.1988) (quoting earlier cases). Not only did Maynard's doctor detect a hearing loss, but CSX did also in its tests administered on September 24, 1990, and March 3, 1991. Based upon a review of the briefs and the record, we conclude that a jury could reasonably infer from the expert testimony, Maynard's age, his length of employment at CSX, and other known facts that Maynard's hearing loss was caused by CSX's negligence. If there is an evidentiary basis for the jury's verdict, this Court is not at liberty to draw a contrary conclusion. Lavender, 327 U.S. 645, 66 S.Ct. 740.
We find no merit in CSX's argument that it is entitled to a review of the trial court's denial of its motion for summary judgment separate and apart from the denial of its motion for a JNOV. This Court has written the following concerning its review of a summary judgment:
"In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). In determining the existence or absence of a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion."
Chatham v. CSX Transportation, Inc., 613 So.2d 341, 343 (Ala.1993). We have considered the evidence Maynard presented at the summary judgment stage, and we find it to *646 be sufficient to create a genuine issue of material fact and thereby to defeat CSX's motion for a summary judgment.

III.
CSX next argues that the trial court allowed a privileged communication to be admitted into evidence and thereby committed reversible error. CSX answered Maynard's complaint by claiming that his allegations were barred by the statute of limitations. Maynard offered the April 19, 1991, letter that he had received from CSX as his response to the statute of limitations defense, alleging that he was not aware that he had suffered an on-the-job hearing loss until he received that correspondence from CSX. CSX argues that the trial court improperly admitted the letter because, CSX argues, it was "a communication in the course of settlement negotiations" and was an offer of compromise. Before we can determine if the trial court erred by admitting the letter, we must first determine if it was a settlement communication, or if it can be used, as Maynard contends, to rebut CSX's statute of limitations defense.
The April 19, 1991, letter was edited and the following portion was introduced to the jury:
"Dear Mr. Maynard:
Many factors are considered in arriving at fair value for a hearing loss claim, which include age, former occupation, job location, length of service and medical history. The audiogram indicates not only the degree of hearing ability but also other causes of any loss of hearing one may have sustained. The specialist evaluating your claim utilized the information available."
Maynard argues that the letter makes no direct offer of compromise and that the jury was totally unaware of any amount that was offered; therefore, he argues, its admission into evidence did not prejudice CSX. Maynard further argues that the questionnaire CSX gave its employees, and which it introduced into evidence at trial, was just as prejudicial, if not more prejudicial. Maynard cites Kohn v. Johnson, 565 So.2d 165, 171 (Ala.1990), which held that when an error in admitting evidence does not affect the result of the trial, this Court will not reverse. See Baker v. Horsley, 212 Ala. 181, 101 So. 830 (1924).
CSX relies upon Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987), to support its argument that the letter was inadmissible. Maynard argues that CSX's reliance upon Super Valu is misplaced. We agree with Maynard. In Super Valu, this Court upheld a trial court's refusal to admit into evidence all letters between the parties after a defendant was served with a complaint, because it considered the letters to be offers of compromise. Maynard argues that this case is distinguishable from Super Valu, because in that case the settlement negotiations were actively underway in connection with the ongoing dispute. In this case, Maynard argues that at the time of the April 19, 1991, letter he had made no claim and had given no indication that he was going to make a claim against CSX. He argues that his actions after he received CSX's April 19, 1991, lettercontacting counselsupport his contention that the letter made him suspect he had a job-related hearing loss.
CSX argues that Maynard stated in his hearing loss questionnaire that the first time a doctor had told him he had a hearing loss that was possibly connected to his work was October 3, 1990. Therefore, CSX argues that Maynard had "notice" of a claim at least six months before he received the letter CSX contends was an offer of compromise. CSX further argues that offers of compromise, submitted to disprove a claim of notice, do not constitute an exception to this privilege, and, therefore, that Maynard should not be allowed to use the letter as a defense to the statute of limitations. If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exists some other purpose for which it is not admissible. See C. Gamble, McElroy's Alabama Evidence, § 12.01 (4th ed. 1991). Consequently, although the letter might otherwise have been inadmissible, because of the alleged privilege, it was admissible to rebut CSX's statute of limitations defense.
*647 Maynard does not deny that he answered in his questionnaire that a doctor had suggested that he might have incurred a hearing loss because of his job; however, he argues that his answer was premised on an injury in March 1985 and his subsequent recovery. Maynard contends that CSX mailed two separate letters to him following his hearing exams and that neither letter suggested that his hearing loss might be the result of his work environment.
The statute of limitations applicable to an FELA hearing loss claim is three years. See 45 U.S.C. § 51 (1988). Maynard argues that an FELA claim accrues, and that the statutory period of limitations begins to run, "when the plaintiff possesses sufficient critical facts from which the injury and its cause, including its work-relatedness, should be plainly known," quoting Chatham v. CSX Transportation, Inc., 613 So.2d 341, 344 (Ala. 1993) (quoting McCoy v. Union P.R.R., 102 Or.App. 620, 623-24, 796 P.2d 646, 648 (1990)) (citing DuBose v. Kansas City S. Ry., 729 F.2d 1026, 1030 (5th Cir.), cert. denied, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984)). Thus, a cause of action under the FELA arises when a claimant is, or reasonably should be, aware of his or her injury and knows, or in the exercise of reasonable diligence should know, of facts indicating that the injury is work related. Chatham, 613 So.2d at 344.
We hold that the trial court did not err in admitting the letter into evidence.

IV.
CSX argues that it was reversible error for the trial court to give a jury charge on loss of future earning capacity, because, it argues, there was no evidence to support this charge. Maynard argues that the trial court reviewed Bishop v. Poore, 475 So.2d 486 (Ala.1985), when determining that he was entitled to argue diminished earning capacity. In Bishop, this Court stated: "A complaint alleging permanent injury is sufficient to imply impairment of earning capacity." 475 So.2d at 488 (citing Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403 (1927)). Dr. Fleigel stated that the plaintiff's high frequency hearing loss was permanent, and the tests conducted by Maynard's experts, as well as those conducted by CSX's consultants, indicated that Maynard suffered hearing loss. Based on the foregoing, we therefore conclude that the trial court did not err when it gave the jury charge on loss of future earning capacity.

V.
CSX argues that the trial court committed reversible error when it allowed Maynard's expert to present a reproduction of the noise that Maynard claimed caused his injury. The trial judge has the discretion to admit a sound recording. Abernathy v. Superior Hardwoods, Inc., 704 F.2d 963, 968 (7th Cir.1983). To allow or disallow an experiment in open court in the presence of the jury is discretionary with the trial court, and the trial court's ruling in that regard will not support a reversal unless the discretion has been abused. See, C. Gamble, McElroy's Alabama Evidence, § 81.02(1) (4th ed. 1991). We do not find that the trial court abused its discretion. CSX's expert testified that the in-court sound pressures were similar to those at the test site and testified that it is sound pressure that causes sensorineural hearing loss.

VI.
CSX complains that the court gave the jury an instruction requested by the plaintiff regarding assumption of the risk. The court instructed the jury that if it found the injury was caused in part or in whole by negligence of the defendant, then the plaintiff had not assumed the risk of the injury. CSX contends that it had not raised the defense of assumption of the risk and that it was error for the court to give the charge referring to assumption of the risk. The charge was taken from Alabama Pattern Jury Instructions: Civil (1977, Supp.1990), charge 17.10. We hold that it was not reversible error, in this case, for the trial court to give the jury an instruction on assumption of the risk.
Based on the foregoing, the trial court's judgment is due to be affirmed.
AFFIRMED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.

*648 ON APPLICATION FOR REHEARING

MADDOX, Justice.
On application for rehearing, CSX presents an issue that was addressed in the original opinion, but in view of CSX's strong insistence that we incorrectly decided the issue, we extend this opinion to address the issue in more detail.
CSX makes the following claims regarding this Court's opinion issued on original deliverance: (1) that this Court has changed the law relating to the admissibility of communications made during the course of settlement negotiations; and (2) that only one week after one division of this Court had cited this state's policy of encouraging extrajudicial settlement of disputes, in Lowery v. Ward, 662 So.2d 224 (Ala.1995), the other division of this Court, by issuing the original opinion on this case without presenting it to the whole court as would have been required by Alabama Rule of Appellate Procedure 15, has overruled Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987), and abolished the privilege against the admission of communications made in the course of settlement negotiations. CSX also argues that "[b]ased on the wording of the questionnaire [that CSX sent to Maynard] and his answers to it, it is impossible for Maynard not to have known that he was submitting a claim."
CSX, in support of those arguments, says that when this Court, in the original opinion, "found that there was no `claim' or `ongoing dispute' at the time that the plaintiff received the April 19, 1991, offer of compromise which was admitted into evidence as Plaintiff's Exhibit 14," the Court "ignores the record and adopts Maynard's fallacious argument as if it were fact." Appellant's brief on application for rehearing, p. 1.
In order to address CSX's arguments, the full Court has considered CSX's arguments made on application for rehearing, although we are of the opinion that Rule 15, Ala. R.App.P., does not require the action of the full court. In view of CSX's claim that the Court, on original deliverance, misunderstood the facts, the Court is of the opinion that a more detailed statement of the facts would be helpful in showing why the Court concluded that the trial court did not err in the admission of evidence in this case.
One of CSX's defenses to the plaintiff's claim was that it was barred by the statute of limitations. As we understood CSX's argument on original submission, and as we understood CSX's argument on application for rehearing, it is as follows: CSX tested Maynard's hearing on September 24, 1990. CSX sent Maynard a letter in regard to that test dated October 3, 1990 (Plaintiff's Exhibit 22, attached hereto as Attachment A). CSX claims the letter shows that Maynard had a hearing loss in both ears and that the hearing loss was work-related. CSX also sent Maynard a second letter, dated April 19, 1991, which purports to notify Maynard of the results of a test done on March 6, 1991.
On December 30, 1990, CSX had distributed to Maynard and other employees a questionnaire (Plaintiff's Exhibit 24), which had a cover sheet of "INSTRUCTIONS FOR COMPLETING QUESTIONNAIRE," (attached hereto as Attachment B). CSX states that the first sentence of the instructions shows, as a matter of law, that Maynard was submitting "an occupationally related hearing loss claim," and that in his answers to questions 11 and 12, on page 13 of the questionnaire (attached hereto as Attachment C), he admitted that he had notice that he had a hearing loss, and that it was work-related.
CSX claimed on original submission, and claims again on application for rehearing, that these facts show, without dispute, that Maynard knew when he answered the questionnaire on December 30, 1990, that he had a work-related hearing loss, and that he was submitting a claim. CSX, therefore, argues that the April 19, 1991, letter (Plaintiff's Exhibit 14; attached hereto as Attachment D), which the trial court admitted into evidence over its objection, was an offer to settle a claim. In its brief, CSX argues that "[n]ot only do [Maynard's] answers to Questions 11 and 12 [see Attachment C] conclusively establish that plaintiff knew he had a claim (in addition to reading the questionnaire's instructions, which advised him that filling out the questionnaire and submitting it to the claims department was the way to file a claim,) but it also established that [the] *649 plaintiff's purported reason for offering the settlement letter into evidencethat it was his first `notice' that he might have a claim was a sham, based on a recent fabrication." Appellant's brief on application for rehearing, p. 4.
We have carefully examined the record again, in view of CSX's continued insistence that the record shows, as a matter of law, that "[o]n December 30, 1990, when [Maynard] executed his hearing loss questionnaire, Plaintiff knew that he had been told on October 3, 1990, of his loss and its connection to his job." In view of the particular facts and circumstances of this case, we cannot agree with CSX's assessment of our holding and with its argument that Maynard, on October 3, 1990, had notice, as a matter of law, that he had a hearing loss and that it was work-related.
Consequently, we cannot agree with counsel for CSX that the April 19, 1991, letter was an offer made in the course of settlement negotiations, similar to the communication involved in Super Valu. The facts that support the holding in Super Valu are clearly distinguishable from the facts of the present case. After reviewing the evidence in Super Valu, the trial court refused to admit evidence offered by Super Valu of selected communications between its agents and the plaintiff or the attorneys representing them, that occurred after the service of the complaint. In that case, the trial court correctly determined that those communications were made in the course of settlement negotiations and were offers of compromise. In this case, the April 19, 1991, letter, which CSX contends was a privileged communication made in the course of settlement negotiations, was received by the plaintiff six months before he filed a complaint, and the circumstances are such that we cannot hold, as a matter of law, that the letter was an offer of compromise.
At the time of the privileged communication in Super Valu, there was an actual dispute that was ongoing between distinct parties, and this Court agreed with the trial court's holding that the letters (which Super Valu contended contained "absolutely no offers of compromise"), when read together, were integral parts of the parties' settlement efforts, and were, therefore, properly excluded. The plaintiff in this case argues, and the record reveals, that there was only one prior item of correspondence from CSX to the plaintiff, in which CSX admitted that the plaintiff had a hearing loss and that it was work-related, and which indicated that CSX was willing to negotiate a settlement of the claim. That correspondence is the letter dated April 19, 1991, which the plaintiff sought to have admitted before the jury as part of his defense against CSX's contention that the plaintiff's claim was barred by the statute of limitations.
The evidence at trial was disputed as to when the plaintiff actually became aware that he had suffered an on-the-job hearing loss so as to begin the running of the statutory limitations period. The record shows that the questionnaire was given out to a sizable number of present and former CSX employees and that it was, in part, introduced at trial by CSX in support of its statute of limitations defense. The plaintiff requested permission to submit the April 19, 1991, letter to support his claim that the statute of limitations did not bar his action.
It is well settled that the standard for determining the accrual time regarding FELA cases is flexible and should be applied on a case-by-case basis. The United States Supreme Court established the Kubrick test for FELA casesthat there is no accrual until the employee knows the facts of injury and causation. United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). As the Fifth Circuit noted in DuBose v. Kansas City Southern Ry., 729 F.2d 1026, 1030-31 (5th Cir.1984):
"[T]he Kubrick court did not discuss whether a claim accrued when a plaintiff should reasonably have been aware of the critical facts of injury and causation, but... the test implicitly contains this formulation. See, e.g., Davis v. United States, 642 F.2d 328, 330 (9th Cir.1981), cert. denied, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982); Barrett v. Hoffman, 521 F.Supp. 307, 317 & n. 14 (S.D.N.Y. 1981), rev'd on other grounds, 689 F.2d 324 (2d Cir.1982)." *650 The court in DuBose also noted the following in addressing the rationale behind the rule:
"The discovery rule developed to avoid mechanical application of statutes of limitations. Thus, we do not read Kubrick as setting an inflexible rule. Instead, we think that the Court intended the discovery rule to be applied in differing fact situations to effectuate the rationale behind the rule.... When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury. See Harrison v. United States, 708 F.2d 1023 (5th Cir.1983); Aerojet-General Shipyards, Inc. v. O'Keeffe, 413 F.2d 793 (5th Cir. 1969)...."
729 F.2d 1026, at 1031.
Based upon the evidence, the trial court in this case concluded that the plaintiff, on October 3, 1990, was not aware as a matter of law that he had suffered a hearing loss because of CSX's negligence, as CSX contends. We conclude that the trial judge did not err in this regard. The facts of this case show that CSX used the plaintiff's responses on a questionnaire to prove that the plaintiff may not have had a job-related injury and that, if he did, his claim was stale.
We reaffirm what this Court has previously stated: "The rationale and public policy underlying the privileged nature of settlement negotiations is the encouragement of extrajudicial settlement of disputes." Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 324 (Ala.1987), quoting Indemnity Co. of America v. Pugh, 222 Ala. 251, 132 So. 165 (1931). Contrary to CSX's argument on application for rehearing, this policy will not be thwarted by our refusal to recognize the April 19, 1991, letter as a privileged communication made in the course of settlement negotiations.
We have reviewed the other issues presented on application for rehearing, and we conclude that the original opinion sufficiently addressed those issues. Based on the foregoing, CSX's application for rehearing is overruled.
OPINION EXTENDED; APPLICATION OVERRULED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.

ATTACHMENT A
MAYNARD ,FORREST
DEPT. : 1231
CLOCK # : 178343
 SS XXX-XX-XXXX
Dear Mr. MAYNARD
The results of your hearing check have been evaluated by our consultant who has identified the following:
Your hearing in both ears indicates that you may not hear or completely understand conversation especially when there is distraction or background noise.
We recommend that you obtain an annual hearing examination. Such testing is available to you through your company-sponsored Hearing Conservation Program.
CSX Transportation, Inc. has available to its employees a wide variety of hearing protection which will reduce the sound level reaching your ears. You should protect your hearing by wearing hearing protection in those areas where hearing protection is mandatory and whenever you are exposed to loud noise either on the job or at home.
10/03/90
 Sincerely,
 CSX Transportation, Inc.

ATTACHMENT B

INSTRUCTIONS FOR COMPLETING QUESTIONNAIRE
In order to present an occupationally related hearing loss claim you must complete the attached questionnaire and submit it to the General Claims Department for processing. Please read these instructions very carefully and comply with them to the fullest.

*651 1. Each question and subpart must be completed even though you may feel that the question is irrelevant. Do not reply "How does this relate to my hearing loss" or some similar respons. All questions must be answered.
2. If you have not had your hearing tested by the railroad within the past year, you must advise the claims representative handling your claim to set you up for an audiological examination either with the occupational health nurse, should one be near you, or an approved audiologist. If you seek an audiogram on your own, you must be checked for the following hertz ranges (500, 1000, 2000, 3000, 4000, 6000 and 8000 hertz). If you are retired or separated from railroad service with CSX Transportation, you must pay for the examination and bring the paid receipt to the claims representative for processing. You will only be reimbursed if your loss indicates that, in part, the railroad company was responsible for your loss. Do not use BELTONE or similar facilities that promote hearing aids.
3. You must attach a copy of your last three (3) years' railroad W-2s. If you no longer are employed, we need the last full three years you worked.
4. All questionnaires and medical authorizations must be signed or the claim will not be processed until they are signed.
5. If there are any questions you do not understand on the questionnaire, check with a Claims Representative for an explanation.
*652 
*653