THOMPSON, Judge
Thomas Edison Wilkerson appeals a summary judgment in favor of Burlington Northern Railroad Company (“BN”) and Illinois Central Railroad Company (“IC”), on his claims under the Federal Employers’ Liability Act, 45 U.S.C. § 51 et seq. (“FELA”). Wilkerson worked as a machinist for IC from 1950 to 1951 and from 1953 to 1983. In 1983, when BN purchased IC’s machine shop, Wilkerson began working for BN and continued working there until he retired. Wilkerson was medically tested for asbestos-related health risks in 1984, after he had attended •a special union meeting during which he was advised of the health risks associated with asbestos exposure. In March 1985, Wilkerson received a letter from Dr. James Merchant advising him that his chest X-ray was “of borderline significance in regard to pneumoconiosis.” Wilkerson was again tested for asbestos-related disease in 1985, by Dr. John Finklea. Dr. Finklea sent Wilkerson a letter in November 1985, enclosing a medical report containing a section entitled “Clinical Comments.” Included in that section was the following phrase: “Mr. Wilkerson has several of the findings expected in early pulmonary asbestosis, namely subtle shortness of breath.... ” Wilkerson testified in his deposition that, after receiving these letters, he communicated with representatives of a law firm and signed a contract providing for that firm to represent him in an action against his former employers for damages he had sustained as a result of asbestos exposure. After Wilkerson signed the contract with the law firm arranging for legal representation on his FELA claims, he was never again contacted by that firm.
Qn September 27, 1995, Wilkerson sued, with a new lawyer, his former employers, BN and IC, alleging claims pursuant to the FELA and the Locomotive Boiler Inspection Act, 45 U.S.C. §§ 22-34. In his complaint, Wilkerson alleged that he was suffering from “severe injury to his body and respiratory system, resulting -in ... impairment, disability and occupationally related disease” because of his exposure to asbestos in his former workplace. Wilkerson further alleged in his complaint:
“[H]e has suffered great pain, extreme nervousness, and mental anguish and believes that his injuries and disability are permanent in nature and that he will be forced to suffer the same for the remainder of his life; that he has an increased risk of developing cancer and further, that his expected life span has been greatly shortened.”
It is unclear from the record exactly what event prompted Wilkerson to sue his former employers. Wilkerson states in his brief to this court that in February 1995 Dr. Richard Holmes diagnosed him, for the first time, with asbestosis. However, the record on appeal contains no medical records from Dr. Holmes and no indication that Wilkerson was ever given a confirmed diagnosis of asbestosis until January 1998, when he received a medical report from Dr. Jay T. Segarra. In his deposition, Wilkerson stated that he could not recall how he learned about Environmental Litigation Group, P.C., the firm that filed the complaint on his behalf.
Following discovery, IC and BN each filed a motion for summary judgment alleging that Wilkerson’s FELA claims were *659 barred by the three-year statute of limitations. On January 14, 1999, the trial court entered a summary judgment on all of Wilkerson’s claims, in favor of BN and IC. Wilkerson filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. The trial court denied that motion on March 12, 1999. Wilkerson appealed the summary judgment as it related to his FELA claims. to the supreme court; Wilkerson did not appeal the summary judgment as it related to his claims under the Locomotive Boiler Inspection Act. The supreme court transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975.
“In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before [it] made out a genuine issue of material fact.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Danners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Our supreme court has held that “[a] cause of action accrues under the FELA when a person knows, or in the exercise of reasonable diligence should know, of the injury and its cause.” Hall v. CSX Transp., Inc., 631 So.2d 1013 (Ala.1994). The motions for summary judgment filed by BN and IC were supported by the letter written to Wilkerson in March 1985 by Dr. Merchant and the letter written in November 1985 by Dr. Finklea, which letters apprised Wilkerson of test results that demonstrated findings consistent with early pulmonary asbestosis. In addition, these summary judgment motions were supported by the following portion of Wilkerson’s deposition:
“Q. When you got this letter from Dr. Finklea, what did you think?
“A. It scared me.
“Q. Did you believe that you had any illness related to your work?
“A. Yes, because at that time, I was getting shortness of breath.
“Q. You were short of breath at that point?
“A. Yes.
[[Image here]]
“Q. We know that by August of 1985— that by 1985 by this report from Dr. Finklea, that he states that there’s ven-tilatory testing showing mild restrictive lung disfunction. Is that true or false?
“A. That’s true.
“Q. Did you, in your own mind, think that that mild restrictive lung disfunction was related to your 37-year exposure to asbestos?
“A. Yes.”
Wilkerson’s opposition to the motions for summary judgment was supported by Wilkerson’s deposition, the reports of Dr. Finklea and Dr. Merchant, and the affidavits of Dr. Finklea and Dr. Merchant. Wilkerson’s motion in opposition was further supported by various medical records from Dr. Waid Shelton, an “Asbestos Evaluation Summary” prepared by Dr. Jay T. Segarra, and two affidavits executed by Dr. Segarra. Dr. Finklea and Dr. Mer *660 chant averred in their affidavits that they did not diagnose Wilkerson with an asbestos-related disease in 1985. Dr. Finklea explained in his affidavit that although Wilkerson exhibited some characteristics that were consistent with asbestosis, “the findings present were not sufficient to warrant making a diagnosis of pulmonary asbestosis.” Dr. Shelton’s medical records reflect that Wilkerson had obtained an annual general physical examination from him over the past 10 years, and they indicated Dr. Shelton had observed “just a few scattered calcified granulomata” in the lungs when he examined Wilkerson’s X-ray on June 16, 1993. Dr. Segarra stated in his affidavit, executed on December 17, 1998, that “it is my opinion, based upon reasonable medical probability, that Mr. Wilkerson’s mild pulmonary asbestosis first developed into a diagnosable disease much more recently than 1985.”
In a recent case, our supreme court reversed a summary judgment the trial court had entered on the grounds that the FELA claim was time-barred; the supreme court held that the date on which the action accrued was a question to be resolved by a jury. See Kindred v. Burlington Northern R.R., 742 So.2d 155 (Ala.1999). In reaching this conclusion, that court reasoned:
“[W]hen a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. However, when a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute-of-limitation purposes is a question of fact to be submitted to and decided by a jury.”
Kindred, 742 So.2d at 157 (citations omitted).
A comparison of the facts presented in Kindred with the facts presented in the present case is instructive in determining whether the evidence warrants but one conclusion as to when Wilkerson’s FELA cause of action accrued. In Kindred, the plaintiff, Lamar Kindred, had also been an employee of BN. He retired from BN in 1973. BN contended that Kindred admitted in a deposition, which he gave over 20 years after his retirement, that at the time he retired in 1973 he believed his respiratory problems to be related to his employment. However, none of Kindred’s medical records supported this contention. Kindred’s medical records contained in the record on appeal reflected an episode of possible pneumonitis in 1979 and an episode of bronchitis in 1983. Kindred was treated for hypotension in 1985, and at that time his medical report stated: “[A] very minimal amount of pleural fluid in the lung bases cannot be excluded [and] coexisting interstitial edema cannot be entirely excluded.” The record in Kindred reflected that Kindred was diagnosed with work-related asbestosis in July 1995. The court in Kindred commented that the medical records contained no evidence to indicate that Kindred’s physicians ever, at any time prior to the July 1995 diagnosis, suggested to him that his pulmonary problems could be employment-related. The Kindred court further determined that Kindred’s deposition testimony pertaining to his knowledge that his respiratory problems were work-related was ambiguous. Our supreme court concluded that Kindred’s response pertaining to his realization of the work-related nature of his lung disease appeared particularly ambiguous when viewed with his medical records, leaving a question as to whether he realized his respiratory problems were work-related in 1973 when he retired or in 1995 when he was diagnosed with asbestosis. Kindred, 742 So.2d at 158.
Although the facts in the present case are somewhat analogous, our review of the record reveals the following important dis *661 tinctions. Wilkerson had initially been made aware of the health risks to which he had been exposed in his former workplace, through union meetings, the first of which he attended in 1984. After the 1984 union meeting, Wilkerson began having regular medical evaluations, seeking early detection of asbestos-related pulmonary problems, and he also obtained legal representation to protect his legal right to recover against his former employers for any work-related injuries he might have suffered.
Dr. John Finklea examined Wilkerson on August 28, 1985, and, following the section titled “Reason for Referral,” Dr. Finklea’s report stated: “Mr. Wilkerson is concerned that jobsite exposures to dust containing asbestos may have damaged his health.” Dr. Finklea’s report gives a detailed, three-page, account of the ways in which Wilkerson had been exposed to asbestos in his work at BN and IC, as well as in his military service and in a job as a service-station attendant, which he held before working for IC. In the report, Dr. Finklea listed as a “Clinical Impression” that Wilkerson had a “[hjistory of jobsite exposures to asbestos beginning 37 years ago with ventilatory testing showing of mild restrictive dysfunction.” Under the section of the report entitled “Clinical Comments,” Dr. Finklea wrote:
“Mr. Wilkerson has several of the findings expected in early pulmonary asbestosis, namely subtle shortness of breath demonstrable with exertion and minimally decreased forced expiratory volume with normal one second forced expiratory volume. He does not as yet have impaired carbon monoxide diffusion capacity, abnormalities on chest x-rays, asbestosis bodies in his sputum or impaired maximum ventilatory volume. Examinations in future years may well document the development of definite pulmonary asbestosis. This is because changes induced by the asbestos he breathed beginning more than 30 years ago are likely to continue as much of the inhaled asbestos will be retained in his lungs.
“Besides being at increased risk for developing pulmonary asbestosis, a serious and potentially fatal lung disease, Mr. Wilkerson has an increased risk for developing cancer as a result of his job-site exposures to asbestos, particularly lung cancer and mesothelioma which is a cancer arising from the lining of the pleural or peritoneal cavities. These cancers do not respond very well to therapy and they are usually fatal. He is also at increased risk for future development of laryngeal and gastrointestinal cancers. Mr. Wilkerson has a prostate nodule which should be evaluated by a urologist of his choice.
“Mr. Wilkerson’s jobsite asbestos exposures make it advisable for him to have lifelong, periodic medical examinations directed towards early detection and treatment of asbestos-related diseases. Such examinations will entail considerable expense and personal inconvenience. Most patients undergoing such examinations also experience considerable anxiety and mental anguish.”
Our supreme court has held:
“[T]he standard for determining the date of accrual of a FELA cause of action is flexible and should be applied on a case-by-case basis. CSX Transp., Inc. v. Maynard, 667 So.2d 642 (Ala.1995). In United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the United States Supreme Court established for FELA cases what has come to be known as the Kubrick test — When did the employee know the facts of injury and causation?”
Kindred, 742 So.2d at 157.
In the present case, the disposi-tive issue is: On what date did Wilkerson’s *662 FELA cause of action accrue? For purposes of the statute of limitations, “accrual” is defined in terms of two components, the injury and its cause. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In Uñe, the court held that when the specific date of a latent injury cannot be determined, the cause of action accrues when the injury manifests itself. Id. at 170, 69 S.Ct. 1018. In CSX Transportation, Inc. v. Maynard, 667 So.2d 642 (Ala.1995), the court stated:
“[A] cause of action under the FELA arises when a claimant is, or reasonably should be, aware of his or her injury and knows, or in the exercise of reasonable diligence should know, of facts indicating that the injury is work related.”
667 So.2d at 647 (quoting Chatham v. CSX Transp., Inc., 613 So.2d 341, 344 (Ala.1993)).
Wilkerson contends that the statutory limitations period did not begin to run until 1995, when Dr. Holmes confirmed a diagnosis of asbestosis. We note that the record contains no evidence of a diagnosis of asbestosis in 1995; however, Dr. Segar-ra stated in his affidavit that Wilkerson’s “mild pulmonary asbestosis first developed into a diagnosable disease much more recently than 1985.” Thus this court is faced with the question whether Wilkerson’s cause of action accrued on the date he received a confirmed and final diagnosis of asbestosis.
In Kindred, writing for the court, Justice Cook posed the question:
“When should Kindred, in the exercise of reasonable diligence, have suspected that his shortness of breath had béen caused by his occupation, and when, on that basis, should he have sought medical advice and legal counsel?”
742 So.2d at 159. The Kindred court determined that this question was one for the jury, because no physician had suggested to him that his respiratory problems were job-related and none of Kindred’s medical records correlated his health problems with his former occupation. In the present case, it is undisputed that in 1985, Wilkerson received reports from two different pulmonary specialists documenting his respiratory symptoms and abnormal test results and linking those abnormal findings to his former employment. Wilkerson further admits to arranging for legal counsel in 1985 to represent him in recovering for these respiratory problems. Finally, Wilkerson stated in his deposition that he related Dr. Finklea’s finding of mild restrictive lung dysfunction, contained in the 1985 report, to his 37-year period of asbestos exposure. We conclude that Wilkerson was not required to be armed with an official and confirmed diagnosis in order to recover against his former employers on his FELA claims. The determination of when a cause of action accrues under the FELA must be made on a case-by-case basis. See CSX Transp., Inc. v. Maynard, 667 So.2d 642 (Ala.1995). Therefore, although in some cases a diagnosis of a work-related disease may be the claimant’s initial notice of an occupational health problem giving rise to a FELA claim, a final diagnosis is not a prerequisite to a FELA action against a former employer. From our review of the evidence, we conclude that Wilkerson reasonably should have suspected in 1985, when he received the reports from Dr. Finklea and Dr. Merchant, that his condition of “restrictive lung dysfunction” was related to his former employment.
Accordingly, the summary judgment entered in favor of BN and IC is due to be affirmed.
AFFIRMED.
CRAWLEY, J., concurs.
*663 ROBERTSON, P.J., concurs m the result.
YATES and MONROE, JJ., dissent.