This case presents the question whether the statute of limitations bars the plaintiff's action to recover damages for injuries he alleges he suffered as a result of an alleged workplace exposure to asbestos. For the reasons discussed below, we conclude that that question may not be answered until a jury determines when the plaintiff's cause of action accrued.
Thomas Edison Wilkerson sued his former employers, Burlington Northern Railroad Company ("Burlington") and Illinois Central Railroad Company ("Illinois Central"), alleging "severe injury to his body and respiratory system, resulting in . . . impairment, disability and occupationally related disease." He claims the injury was caused by exposure to asbestos over a roughly 30-year period he worked for the defendants. He also alleged:
 "[H]e has suffered great pain, extreme nervousness, and mental anguish and believes that his injuries and disability are permanent in nature and that he will be forced to suffer the same for the remainder of his life; that he has an increased risk of developing cancer and further, that his expected life span has been gravely shortened."
The defendants moved for a summary judgment; the trial court granted their motions. Wilkerson appealed to this Court from the summary judgment for the defendants. Pursuant to § 12-2-7(6), Ala. Code 1975, this Court transferred the appeal to the Court of Civil Appeals. The Court of Civil Appeals affirmed. Wilkerson v. Burlington N. R.R.,795 So.2d 657 (Ala.Civ.App. 1999). We granted Wilkerson's petition for certiorari review. We now reverse and remand.
The trial court entered the summary judgment on the conclusion that Wilkerson had not filed his action within the three-year statute-of-limitations period of the Federal Employers' Liability Act ("FELA"). See 45 U.S.C. § 56. The Court of Civil Appeals affirmed, on the same rationale. However, two of the Judges of that court dissented, concluding that the statute of limitations did not bar this action.
In Kindred v. Burlington Northern Railroad Co., 742 So.2d 155 (Ala. 1999), this Court recently considered another case wherein the plaintiff brought an asbestos-related FELA action. In that case, Justice Cook wrote for the Court:
 "When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. See LeBlang Motors, Ltd. v. Subaru of America, Inc., 148 F.3d 680 (7th Cir. 1998); JN Exploration Production v. Western Gas Resources, Inc., 153 F.3d 906 (8th Cir. 1998); DXS, Inc. v. Siemens Medical Systems, Inc., 100 F.3d 462 (6th Cir. 1996). However, when a disputed issue of fact is raised, the determination *Page 665 
of the date of accrual of a cause of action for statute-of-limitations purposes is a question of fact to be submitted to and decided by a jury. Id. This Court has written:
 "`Federal courts have interpreted two Supreme Court cases, Urie v. Thompson, [337 U.S. 163] (1949), and United States v. Kubrick, [444 U.S. 111] (1979), to mean that [a] FELA claim accrues, and the statutory period of limitations begins to run, "when the plaintiff possesses sufficient critical facts from which the injury and its cause, including its work-relatedness, should be plainly known."'"
742 So.2d at 157. In Kindred, the plaintiff had testified in a deposition as follows:
 "`Q. When did you first start figuring out you had any problem breathing that would be related to your work?
"`A. Well, I can't recall right now.
 "`Q. Okay. Would it have been — When you retired, did you have any trouble breathing at all?
"`A. I —
"`Q. Had you noticed any shortness of breath by age 65?
 "`A. Well, my breathing wasn't as good as it had been being.
 "`Q. Did you think that that had anything to do with those long years that you had worked for the railroad and for T T and all other odd jobs you had?
"`A. I believe so.'"
742 So.2d at 157. This Court held that Kindred's deposition testimony raised an issue of fact to be resolved by a jury:
 "When asked, during his deposition, whether he believed his breathing problems had anything to do with his years of employment with the railroad, Kindred replied, `I believe so.' [Burlington (also the defendant in the Kindred case)] contends that Kindred's statement indicates that he knew of his injury and its cause 22 years before he filed this lawsuit. However, Kindred's response is ambiguous and leaves a question as to whether he was referring to his knowledge at the time of the deposition or his knowledge in 1973. Furthermore, in the deposition testimony appearing just before this response, Kindred states that he does not recall when he first suspected that his breathing problem could be work-related. Therefore, a disputed question of fact is raised regarding the date of accrual, for statute-of-limitations purposes; this creates a question of fact for the jury."
742 So.2d at 158.
In this case, the evidence tends to show that in 1984 Wilkerson attended a meeting organized by his union to discuss with union members the possibility that they could have been exposed to asbestos in their workplaces. Attorneys were present at that meeting, and they told union members that the members could sign up for medical examinations to determine whether they were suffering from asbestos exposure. Wilkerson signed up for an evaluation. Several months later, Dr. James A. Merchant wrote the following in a letter he sent to Wilkerson:
 "I am writing to give you the results of your medical screening examination completed in Birmingham, Alabama in August of 1984. Results of your examination were recently referred to me for interpretation and reporting to you.
 "The results of your chest radiographic evaluation revealed some rounded and irregular opacities laterally in the mid and lower lung zones. The cardiac shadow was noted to be somewhat enlarged. No other abnormalities were *Page 666 
noted. This film is of borderline significance in regard to pneumoconiosis.
 "The results of your pulmonary function evaluation found the FVC, the FEV, and your expiratory flow rates to be within the normal range.
 "The tests that were performed were designed for screening purposes only. They are not the same as a comprehensive medical evaluation by your personal physician. Should you wish your personal physician or another physician to have further details of this evaluation, . . . I will be happy to send details on to him."
(C.R. at 343.) Wilkerson was subsequently evaluated by Dr. John F. Finklea. Dr. Finklea wrote in a report:
 "Mr. Wilkerson has several of the findings expected in early pulmonary asbestosis, namely subtle shortness of breath demonstrable with exertion and minimally decreased forced expiratory volume with normal one second forced expiratory volume. He does not as yet have impaired carbon monoxide diffusion capacity, abnormalities on chest x-rays, asbestosis bodies in his sputum or impaired maximum ventilatory volume. Examinations in future years may well document the development of definite pulmonary asbestosis. This is because changes induced by the asbestos he breathed beginning more than 30 years ago are likely to continue as much of the inhaled asbestos will be retained in his lungs.
 "Besides being at increased risk for developing pulmonary asbestosis, a serious and potentially fatal lung disease, Mr. Wilkerson has an increased risk for developing cancer as a result of his jobsite exposures to asbestos, particularly lung cancer and mesothelioma which is a cancer arising from the lining of the pleural or peritoneal cavities. These cancers do not respond very well to therapy and they are usually fatal. He is also at increased risk for future development of laryngeal and gastrointestinal cancers. Mr. Wilkerson has a prostate nodule which should be evaluated by a urologist of his choice.
 "Mr. Wilkerson's jobsite asbestos exposure make it advisable for him to have lifelong, periodic medical examinations directed towards early detection and treatment of asbestos-related diseases. Such examinations will entail considerable expense and personal inconvenience. Most patients undergoing such examinations also experience considerable anxiety and mental anguish."
(C.R. at 350.) Wilkerson received a copy of this report in October 1985.
In his deposition, Wilkerson testified:
 "Q. When you got this letter from Dr. Finklea, what did you think?
"A. It scared me.
 "Q. Did you believe that you had any illness related to your work?
 "A. Yes, because at that time, I was getting shortness of breath.
"Q. You were short of breath at that point?
"A. Yes.
". . . .
 "Q. We know that by August of 1985 — that by 1985 by this report from Dr. Finklea, that he states that there's ventilatory testing showing mild restrictive lung dysfunction. Is that true or false?
"A. That's true.
 "Q. Did you, in your own mind, think that that mild restrictive lung dysfunction was related to your 37-year exposure to asbestos?
"A. Yes."
(C.R. at 330.)
Dr. Merchant and Dr. Finklea both submitted affidavits, which Wilkerson attached *Page 667 
to his motion in opposition to summary judgment. In their affidavits, they both state unequivocally that they did not diagnose Wilkerson with asbestosis. Dr. Finklea's report appears consistent with those affidavits. Dr. Finklea's report states that Wilkerson had "subtle shortness of breath demonstrable with exertion," and it lists "mild restrictive lung dysfunction" as a "clinical impression." However, his report appears to stop short of diagnosing Wilkerson with asbestosis. He speaks in terms of "increased risk for developing pulmonary asbestosis" and advises "medical examinations directed towards early detection and treatment of asbestos-related diseases." Further, following his receipt of Dr. Finklea's report, Wilkerson went to his family physician and provided his physician with a copy of the report. His physician told him that he had not contracted an asbestos-related disease. (C.R. at 329.)
Given these facts, two Judges of the Court of Civil Appeals concluded (with one Judge concurring in the result):
 "In the present case, it is undisputed that in 1985, Wilkerson received reports from two different pulmonary specialists documenting his respiratory symptoms and abnormal test results and linking those abnormal findings to his former employment. Wilkerson further admits to arranging for legal counsel in 1985 to represent him in recovering for these respiratory problems. Finally, Wilkerson stated in his deposition that he related Dr. Finklea's findings of mild restrictive lung dysfunction, contained in the 1985 report, to his 37-year period of asbestos exposure. We conclude that Wilkerson was not required to be armed with an official and confirmed diagnosis in order to recover against his former employers on his FELA claims."
795 So.2d at 662. However, the dissenting Judges wrote: "I do not understand how one could have a cause of action for having an asbestos-related disease until he actually has the disease. Having an increased chance of getting the disease cannot trigger the statute of limitations period." 795 So.2d at 663 (Monroe, J., dissenting, joined by Yates, J.).
Based on the evidence discussed above, we conclude that a disputed question of fact exists as to "when the plaintiff possess[ed] sufficient critical facts from which the injury and its cause, including its work-relatedness, should [have been] plainly known." See Kindred, supra, 742 So.2d at 157. Accordingly, the date Wilkerson's cause of action accrued is a question for the jury. The summary judgment for the defendants was therefore inappropriate, and the Court of Civil Appeals' judgment affirming it is due to be reversed.
REVERSED AND REMANDED.
Hooper, C.J., and Houston, Cook, Lyons, Brown, Johnstone, and England, JJ., concur.